UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CHARLES L. SMITH and wife,       )
BERNA SMITH,                     )
                                 )
        Plaintiffs,              )
                                 )
v.                               )       NO.:  2:13-CV-197
                                 )
UNICOI COUNTY, TENNESSEE, *et al.*,  )
                                 )
        Defendants.              )

MEMORANDUM OPINION AND ORDER

The plaintiffs filed this section 1983 action and allege the defendants violated the Fourth

and Fourteenth Amendment rights of Charles L. Smith ("Smith" or "plaintiff"), by using

excessive force during his arrest and then by being deliberately indifferent to a serious medical

need.  The named, individual capacity defendants move for summary judgment, [Doc. 31], based

upon qualified immunity.  The plaintiffs have responded, [Doc. 40], and the matter is ripe for

review.[1]  Because there are no genuine issues of material fact as to whether a constitutional

violation occurred and because there are no issues of fact that the defendants violated a clearly

established right, the defendants' motion is GRANTED.

## I.  FACTS

The facts taken in the light most favorable to the plaintiff are set forth below.[2]  Mike

Hensley was the Sheriff for Unicoi County, Tennessee in October of 2012.  [Doc. 32, ¶ 2].  Matt

---

[1] The plaintiff's cursory request for more time to conduct discovery, [Doc. 40, pg. 13], is denied.
[2] This Court had difficulty determining the disputed facts in that the plaintiffs failed to respond in a separate
document to each fact set forth by the defendants by either (1) agreeing that the fact is undisputed, (2) agreeing that
the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (3) demonstrating that the
fact is disputed, which this Court requires.  However, this failure is excused.  These instructions are contained in the

McNally was working for the Unicoi County Sheriff's Department as a deputy narcotics officer. [Doc. 33, ¶ 2]. Chad Lewis was also a deputy working for the Unicoi County Sheriff's Department at that time. [Doc. 34, ¶ 2].

On October 18, 2012, the defendants were at Walmart located at 110 Rocky Bottom Drive in Unicoi, Tennessee. They were conducting an undercover drug operation. [Doc. 33, ¶ 3]. That day, the plaintiff, with Ramarco Allen (hereinafter "Allen") in the passenger's seat, drove his vehicle to that Walmart. [Doc. 1, PageID # 3, ¶ 12]. The plaintiff parked his vehicle and Allen went inside Walmart. [Doc. 1, PageID # 3-4, ¶14]. A Unicoi County Sheriff's Department's female informant approached the vehicle and talked with the plaintiff. [Doc. 1, PageID # 4, ¶15]. Allen returned to the vehicle from Walmart, entered the passenger's side of the vehicle, and engaged in a conversation with the informant. [Doc. 1, PageID # 4, ¶16]. The informant purchased drugs from the occupants of the vehicle. [Doc. 33, ¶ 4].

Once the drug deal was complete, Unicoi County Sheriff's Department deputies attempted to arrest the occupants of the vehicle. [Doc. 33, ¶ 5]. The plaintiff drove away from the deputies in an attempt to exit the Walmart parking lot. [Doc. 33, ¶ 5]. Sheriff Hensley and other deputies immediately moved their vehicles from nearby establishment parking lots and blocked the Walmart exit to prevent the plaintiff's vehicle from escaping. [Doc. 33, ¶ 6].

Deputies McNally and Lewis approached the stopped vehicle and ordered the occupants to turn off the vehicle, exit it and get on the ground with arms spread. [Doc. 33, ¶ 7; Doc. 34, ¶ 6]. The plaintiff did not respond promptly to those commands; thus, Deputies McNally and Lewis proceeded to remove him from the vehicle. [Doc. 33, ¶ 7; Doc. 34, ¶ 6]. During removal, Deputy Lewis noticed a fixed blade knife inside the driver's door. [Doc. 34, ¶ 8]. The deputies

Court's Scheduling Order, and one has not been entered in this case due to the early filing of the summary judgment motion based on qualified immunity. Nonetheless, because of the failure, it appears that many of the defendants' facts are not disputed.

removed the plaintiff from the vehicle, encountered passive resistance and then took him to the ground to handcuff him. [Doc. 34, ¶ 10]. In that process, Deputy Lewis lost his balance and fell to the ground. [Doc. 34, ¶ 10]. He landed on the plaintiff's right arm. [Doc. 34, ¶ 10]. He handcuffed the plaintiff and assisted him back to his feet. [Doc. 34, ¶ 11]. The plaintiff then complained to Deputy Lewis about arm pain, so Deputy Lewis moved the handcuffs to the front of his body for more comfort. [Doc. 34, ¶ 11].

Deputy Lewis transported the plaintiff from the scene to the Unicoi County Jail. [Doc. 34, ¶ 13]. The plaintiff complained about arm pain while being transported to jail, and Deputy Lewis advised him that the jail could call EMS to evaluate him if it kept bothering him. [Doc. 34, ¶ 13]. The defendants had no further involvement with the plaintiff after he was transported to the jail. [Doc. 34, ¶ 15; Doc. 33, ¶ 11]. After the plaintiff was booked into the jail, MedicOne was called and came to the jail to evaluate his arm. [Doc. 1, PageID # 6, ¶ 30].

Sheriff Hensley was present during the arrest of the plaintiff but did not directly participate in securing the plaintiff. [Doc. 32, ¶ 9]. He did not observe any force that he thought was inappropriate or excessive. [Doc. 32, ¶ 10]. He claims that he was not aware that the plaintiff had suffered any injury until after the plaintiff had been taken to the hospital the next day. [Doc. 32, ¶ 12].

The plaintiff offers further explanation of the facts, but he does not necessarily dispute them.[3] The plaintiff asserts that he was not aware that a drug deal was occurring that day at the Walmart. [Doc. 40-4, ¶ 8]. He further asserts that he did not knowingly flee from the police. [Doc. 40-4, ¶ 9]. He also explains that he was slow to get out of the car when ordered because of his health problems. [Doc. 40-4, ¶ 10]. Finally, he asserts that the deputies broke his arm as

---

[3] The Court agrees with the defendants that the facts set forth in paragraphs 25 through 39 of Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment, [Doc. 41], are not relevant to this particular motion, for they deal with events after contact between these defendants and the plaintiff ceased.

3

they removed him from the vehicle and that no one ever fell on him. [Doc. 40-4, ¶ 10]. This caused him to constantly yell out in pain and for swelling to begin immediately. [Doc. 40-4, ¶ 11].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this

Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

Again, the defendants claim that they are entitled to qualified immunity for the alleged Fourteenth Amendment violation of excessive force against a pretrial detainee.

> In determining an officer's entitlement to qualified immunity [this Court] follow[s] a two-step inquiry.[4] *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First, taken in the light most favorable to the plaintiff, [the Court] decide[s] whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have

---

[4] The Supreme Court has held that the *Saucier* approach is no longer mandatory, and the district courts can elect to decide the second issue without determining whether a constitutional violation actually occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This Court will use the two step approach of *Saucier*.

violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

### A. Excessive Force

A citizen's claim that law enforcement officials used excessive force in making a seizure is reviewed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, this Court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396). This Court must, thus, afford careful attention to the facts and circumstance of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. However, the ultimate question is "whether the totality of the circumstances justifie[d]" the use of force. *Johnson v. City of Lincoln Park*, 434 F.Supp.2d 467, 479 (E.D. Mich. 2006). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Thus, the Court must take into account the fact that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and

rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In addition, the extent of a plaintiff's injury, though not crucial, is also considered in adjudicating excessive force claims." *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001).

### 1. Whether there was a constitutional violation?

The first step in the analysis is to determine whether the facts alleged, when taken in the light most favorable to the plaintiff, show that the officers' conduct violated a constitutional right. The undisputed facts show that the plaintiff drove the vehicle that was involved in a drug deal; illegal drugs were purchased from an occupant of this vehicle; the plaintiff drove the vehicle away from the deputies while attempting arrests; the plaintiff stopped the vehicle only after the exit was blocked by police; the plaintiff did not promptly exit the vehicle when instructed; and a deputy witnessed a weapon inside the vehicle within plaintiff's reach. The plaintiff's knowledge or subjective motives for doing or not doing what he did are not relevant to the Court's inquiry, for this Court must judge the force used from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396.

Considering these facts in the light most favorable to the plaintiff, this Court concludes that the force used to remove the plaintiff from his vehicle was not unreasonable. This was a dangerous situation in which a drug deal had occurred and the suspects attempted to flee the scene in a vehicle (which could be considered a deadly weapon). In addition, for whatever reason, the plaintiff was non-compliant with the officers' verbal commands to exit the vehicle. Also, a weapon was within the plaintiff's reach. The force used to remove the plaintiff from the vehicle was reasonable under these circumstances. The officers did not use any hand or foot strikes, batons, chemical agents, firearms, tasers or other methods of force. The level used was appropriate to ensure the safety of the officers. This Court finds support for this decision in a

similar case of *Dunn v. Matatall*, 549 F.3d 348 (6th Cir. 2008), which was cited by the defendants. It is on point and comes to a similar conclusion.

## 2. Whether there was a violation of a clearly established right?

Because this Court found no constitutional violation, it need not address the second step in the analysis. However, the Court will address it very briefly. The defendants argue that even if there is a genuine issue of fact as to whether the force used violated Smith's constitutional rights, they are still entitled to qualified immunity because there was no violation of a clearly established right. In other words, the officers here are entitled to qualified immunity unless the law was so clearly established that reasonable officers would have known that the force used violated Smith's constitutional rights.

Here, neither the plaintiff nor the defendants have offered any cases that indicate the type of forced used under these or similar circumstances could be considered excessive. The Court has already set forth why the force used was reasonable under the circumstances and will not do so again. The plaintiff has failed to show that the defendants violated a clearly established right. *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

## B. Deliberate Indifference

The plaintiff claims that defendants violated his Fourteenth Amendment rights relating to pre-trial detainees. For this analysis, the Court uses the same standard applicable to Eighth Amendment claims, i.e., whether the defendants were deliberately indifferent to a serious medical need. *See Thompson v. County of Medina*, 29 F.3d 238, 327 (6th Cir. 1994); *Blackmore v. Kalamazoo County*, 30 F.3d 890, 895 (6th Cir. 2004).

"Deliberate indifference" is analyzed by both an objective and a subjective component. *See Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In cases involving an inmate's

medical needs, the need "must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In considering the subjective component, a plaintiff must produce evidence showing "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. The subjective component requires that an official who actually knew of the serious medical need possessed "a sufficiently culpable state of mind in denying medical care." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* at 813 (quoting *Farmer*, 511 U.S. at 835). The Supreme Court has also said, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

The undisputed facts show that the plaintiff did not suffer from an open fracture or compound fracture at the scene. There is no evidence of the arm being bruised at the scene. There is some dispute as to whether his arm was swollen. In the plaintiff's declaration, he claims that once placed in the police car, his arm "was already starting to swell up." [Doc. 40-4, ¶¶ 10-11]. The defendants never mention that they noticed swelling. Defendant Lewis did note that the plaintiff complained about arm pain. [Doc. 34, ¶¶ 11, 13]. He told the plaintiff that the jail would call EMS if it kept bothering him, and it was his understanding that this was going to happen. [Doc. 34, ¶¶ 13, 14]. None of the defendants had any further contact with the plaintiff once he was transported to the Unicoi County Jail. It is further undisputed that the plaintiff

eventually received medical treatment at the jail. MedicOne evaluated the plaintiff and then sometime later he was taken to the hospital.

Based on these facts, and relating only to these defendants, the issue is whether these defendants caused an unreasonable delay in the plaintiff receiving medical treatment. The Court finds that they did not. *See Hubbard v. Gross*, 199 Fed. App'x 433, 437-38 (6th Cir. 2006) (holding two-hour delay not unreasonable); *Gray v. Dorning*, 202 F.3d 268 (6th Cir. 1999) (holding eight-hour delay not unconstitutional).

Relating to the subjective component, neither Sheriff Hensley nor Deputy McNally recalled the plaintiff complaining of an injury. Deputy Lewis did acknowledge such complaints. However, he informed the plaintiff that the jail would call EMS, and it was his understanding that EMS would be called once he was at the jail. The plaintiff offers no evidence to the contrary that creates an issue of fact as to these defendants' subjective knowledge. The plaintiff does offer evidence as to his repeated complaints of pain and the time frame for the delay in treatment as to MedicOne and being taken to the hospital. However, this evidence goes to a time after which these defendants' contact with the plaintiff had ceased. The subjective component is not met because there is no evidence that these defendants were aware of a serious medical need and had the culpable mental state.

In sum, based on these facts as to these defendants, they are entitled to qualified immunity relating to deliberate indifference because reasonable officers in their position could have believed that their actions were consistent with plaintiff's constitutional rights.

### C. Whether Sheriff Hensley is entitled to qualified immunity?

Because this Court has found no Fourth or Fourteenth Amendment violations committed by these particular defendants, it need not address Sheriff Hensley individually. However,

because the filings addressed him separately, the Court will likewise do so. Although unclear, it seems that the plaintiffs are asserting a failure to supervise claim against Sheriff Hensley since he had no personal involvement with the arrest and did not make the decision on whether the plaintiff received medical treatment, considering this Court's previous finding that he was not subjectively aware of the plaintiff's injury. Liability under § 1983 cannot be based on the doctrine of *respondeat superior*. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, the plaintiff must show that the defendant personally violated his rights. For supervisory liability to attach, the defendant must be shown to have encouraged the violation of his rights "or in some other way directly participated in it." *Id*. (internal quotation marks omitted). "At a minimum," the defendant must have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (internal quotation marks omitted).

Stated differently, supervisory liability will attach if the defendant possessed information revealing a "strong likelihood" of unconstitutional conduct by subordinate officers but did nothing to prevent the misconduct, thereby causing harm to Smith. *See Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir.2002), *cert. denied*, 537 U.S. 1232 (2003); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 513 (6th Cir.1996). In such circumstances, the defendant is said to have exhibited "deliberate indifference" to violations of Smith's constitutional rights.

Based on the current record, there is no genuine issue of material fact that Sheriff Hensley possessed information revealing a "strong likelihood" of unconstitutional conduct by his subordinates and did nothing to prevent the conduct. As such, the section 1983 claim against him in his individual capacity is DISMISSED.

## IV. CONCLUSION

For the reasons set forth above, the defendants' motion is GRANTED. A Scheduling Order will enter shortly with regard to the remaining claims.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE