UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CHARLES L. SMITH and wife, )
BERNA SMITH, )
 )
    Plaintiffs, )
 )
v. ) No. 2:13-CV-197
 )
UNICOI COUNTY, TENNESSEE, *et al.*, )
 )
    Defendants. )

### MEMORANDUM OPINION AND ORDER

The plaintiff[1] filed this section 1983 action and alleges the defendants violated the Fourth and Fourteenth Amendment rights of Charles L. Smith ("Smith" or "plaintiff"), by using excessive force during his arrest and then by being deliberately indifferent to a serious medical need. The named, individual capacity defendants moved for summary judgment, [Doc. 31], based upon qualified immunity. This Court held that because there are no genuine issues of material fact as to whether a constitutional violation occurred and because there are no issues of fact that the defendants violated a clearly established right, the defendants' motion was granted, [Doc. 46]. The plaintiff has moved the Court to reconsider this ruling, [Doc. 49], and the defendants have responded, [Doc. 51]. In addition, Defendant Unicoi County has filed a motion for summary judgment, [Doc. 54], to which the plaintiff has responded, [Doc. 59]. These matters are ripe for review.

### I. FACTS

---

[1] Plaintiff Berna Smith filed a loss of consortium claim. It was unclear whether the claim is related to the federal constitutional claims. This Court has previously dismissed without prejudice all state law claims. In plaintiff's response, [Doc. 59, pg. 2], it is conceded that a section 1983 federal claim does not support a derivative loss of consortium claim. Thus, the plaintiff admits that Berna Smith's claims were dismissed with the state law claims.

Many of the facts have been set forth previously in this Court's March 26, 2015 Memorandum Opinion and Order. Additional facts, taken in the light most favorable to the plaintiff are set forth below.

The plaintiff arrived at the Unicoi County Jail at approximately 11:00 p.m. on October 18, 2012. [Declaration of Bill Oliver, ¶ 3] Bill Oliver was the jailer on duty. [Oliver Decl., ¶ 4] The plaintiff told Jailer Oliver that his right upper arm was broken. [Oliver Decl., ¶ 5] After booking was completed, the plaintiff was placed in the jail's library, with no bathroom facilities, and Jailer Oliver called MedicOne, the local EMS provider. [Oliver Decl., ¶¶ 7-8] MedicOne personnel arrived at 12:45 a.m. on October 19, 2012. [Oliver Decl., ¶ 8]

MedicOne's notes state, "LAW ENFORCEMENT WAS ADVISED THAT PATIENT SHOULD BE SEEN AT THE [EMERGENCY DEPARTMENT] FOR HIS INJURIES AND CHEST PAINS. EMS WAS ADVISED THAT LAW ENFORCEMENT WOULD TRANSPORT PATIENT TO [EMERGENCY DEPARTMENT]." [Smith Aff., ¶ 6 and Ex. A] Jailer Oliver declares he was told that the plaintiff's right arm was probably broken, but due to swelling x-ray would not show break because tissue would hold bone in place, but to take him to ER later. [Oliver Decl., ¶ 9] The plaintiff disputes this fact.

It is undisputed, however, that at no time did Jailer Oliver observe an open fracture or compound fracture, [Oliver Decl., ¶ 10] and at no time did MedicOne personnel report to Jailer Oliver that the plaintiff had an open fracture or compound fracture. [Oliver Decl., ¶ 11] MedicOne personnel also checked the plaintiff's vital signs because he was complaining of chest pain. [Oliver Decl., ¶ 12] MedicOne personnel reported that his vital signs were normal. [Oliver Decl., ¶ 13] MedicOne personnel left the Jail at 12:59 a.m. on October 19, 2012. [Oliver Decl., ¶ 15]

2

Right before MedicOne personnel left, Jailer Oliver signed the "Patient Refusal of Treatment and/or Transport" form as "Patient Representative." [Smith Aff., ¶ 7, Ex. A] That form states that the patient "declines all EMA care and further refuses all offers of ambulance transportation," and the plaintiff claims this statement is false. [Smith Aff., ¶ 7-8]

Jailer Oliver claims, and plaintiff disputes, that at no time did MedicOne personnel advise Jailer Oliver that the plaintiff needed immediate transport to the ER for any reason. [Oliver Decl., ¶ 14] Moreover, he claims that if MedicOne personnel had decided that they needed to transport Mr. Smith to the ER, then Jailer Oliver would not have interfered with that decision because the reason Jailer Oliver called MedicOne was to have medical personnel determine whether Mr. Smith needed immediate medical care or not. [Oliver Decl., ¶ 16]

During the night, the plaintiff repeatedly called out in pain and asked for medical treatment. He asked to be taken to the hospital. Jailer Oliver's shift ended at 7:00 a.m. [Oliver Decl., ¶ 17] Before leaving, he advised the shift supervisor who came on duty at 7:00 a.m. of the situation. [Oliver Decl., ¶ 18] After observing the plaintiff, the jail supervisor had the plaintiff transported to the ER at 9:48 a.m. [Second Declaration of Sheriff Mike Hensley, ¶ 3] Upon looking at the plaintiff's arm, she said that "we need to get him to the hospital right now" and that "somebody messed up." [Smith Aff., ¶ 9] When the plaintiff arrived at the hospital, his arm was swollen to the size of a football. [Smith Aff., ¶ 10] After taking x-rays, the doctor informed the plaintiff the arm was broken, gave him pain medication, splinted the arm, and referred him to a specialist. [Smith Aff., ¶ 10-11] The specialist placed a temporary cast on the arm but did not set it because it was too swollen. [Smith Aff., ¶ 11]

The plaintiff did not dispute the fact that Unicoi County does not have any custom, policy or practice that would "facilitate" a jailer ignoring a substantial risk of serious harm to an inmate.

3

[Hensley Decl., ¶¶ 4-5] [Doc. 60, pg. 3, ¶ 18]. The plaintiff also did not dispute the fact that there has not been a practice of Unicoi County jailers – much less a widespread practice – to ignore or disregard serious medical needs of inmates. [Hensley Decl., ¶ 6] [doc. 60, pg. 3, ¶ 19]

## II. MOTION TO RECONSIDER

### A. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders. The Court's power to reconsider exists under federal common law, *see, e.g., City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001), and there is additional support in Federal Rule of Civil Procedure 54(b). *See Fayetteville v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469-70 (4th Cir. 1991) (approving of Rule 54(b) as a proper procedural vehicle for bringing motions to reconsider interlocutory orders). Under Rule 54(b), an order that determines fewer than all the claims or rights of the parties does not terminate the action, and the order is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Again, this Court has authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment. *See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). This authority allows district courts "to afford such relief from [interlocutory orders] as justice requires." *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F.Supp. 976, 981 (D. D.C. 1994); *see also Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Reich v. Hall Holding Co.*, 990

4

F. Supp. 955, 965 (N.D. Ohio 1998). Neither party addresses the issues raised in their motions via this standard. The Court will discuss each motion in turn, starting with the plaintiffs' motion.

## B. ANALYSIS

The plaintiff does not argue that there is newly discovered evidence or any intervening change in the controlling law. He has not argued that the Court needs to amend the previous decision to prevent manifest injustice. Thus, it appears he is arguing that the Court made a clear error of law. However, the plaintiff essentially argues that based on the facts already before the Court, there were issues of fact for the jury to decide on the various claims. More or less, he reargues issues previously decided by the Court. Nevertheless, the Court will address the arguments.

### 1. Excessive Force

The plaintiff basically argues that the Court failed to credit his version of the facts, specifically, the reasons or explanations of why he did what he did. This is not so. The Court viewed the facts in the light most favorable to the plaintiff as it must. This Court stated that the undisputed facts showed:

> The undisputed facts show that the plaintiff drove the vehicle that was involved in a drug deal; illegal drugs were purchased from an occupant of this vehicle; the plaintiff drove the vehicle away from the deputies while attempting arrests; the plaintiff stopped the vehicle only after the exit was blocked by police; the plaintiff did not promptly exit the vehicle when instructed; and a deputy witnessed a weapon inside the vehicle within plaintiff's reach.

[Doc. 46, pg. 7]. Again, the plaintiff did not dispute the above facts. Further, the Court stated, "The plaintiff's knowledge or subjective motives for doing or not doing what he did are not relevant to the Court's inquiry, for this Court must judge the force used from the perspective of a

5

reasonable officer on the scene." [Doc. 46, pg. 7] (citing *Graham v. Conor*, 490 U.S. 386, 396 (1989)).

The plaintiff also asserts that there is a dispute as to how his arm was broken. He claims that it happened when he was pulled out of the vehicle. He argues that the defendants claim it was broken when an officer fell on him. However, this Court noted the difference. Importantly, this fact is not material. Even if the officers pulled the plaintiff forcefully out of the car, under the circumstances present, that force was reasonable. It is regrettable and very unfortunate, of course, that the plaintiff was injured. Nonetheless, there is no genuine issue of fact as to whether the force was reasonable under the undisputed facts presented.

### 2. Deliberate Indifference

Again, the plaintiff attempts to reargue the issues raised previously. This Court stands by its previous decision. When taking the plaintiff's version of the facts as true, his arm was starting to swell and he was complaining of pain when placed in the police car at the scene. The only evidence that the arm was swollen at the time these defendants were involved is the plaintiff's own affidavit. He states that while in the back of the police car "it was already starting to swell up." [Doc. 40-4, ¶ 11]. There was no evidence of an open or compound fracture. He does not state in his affidavit that any officer saw the arm "starting to swell." Defendant Lewis transported him to the jail and during transport informed the plaintiff the jail would call EMS and have him treated. The defendants had no further contact with the plaintiff.

Subjectively, neither Sheriff Hensley nor Deputy McNally recalled complaints of an injury, and Deputy Lewis acknowledged such complaints but no other symptoms, including swelling. Again, the plaintiff did not submit any evidence to show that a lay person would see that the upper arm was fractured at that point in time. *See Hoffner v. Bradshaw*, 622 F.3d 487,

500 (6th Cir.2010) (finding that a "self-serving affidavit carries little weight, especially in light of the copious evidence in the record to contradict it"). Therefore, the subjective component is not met despite the injury being serious.

Regarding the objective component, EMS treated the plaintiff within a couple of hours of plaintiff's arrival at the jail. Again, a delay of this length does not amount to deliberate indifference. *Hubbard v. Gross*, 199 Fed. App'x 433, 437-38 (6th Cir. 2006) (holding two-hour delay in treating a fractured hand not unreasonable) *Gray v. Dorning*, 202 F.3d 268 (6th Cir. 1999) (holding eight-hour delay in treating a fractured wrist not unreasonable). The Court does not find these cases distinguishable even in terms of the seriousness of the injury and the subjective component which was discussed above.

### 3. Sheriff Hensley

The plaintiff argues that "there are genuine issues of material fact as to whether Sheriff Hensley possessed information revealing a 'strong likelihood' of unconstitutional conduct by subordinate officers but did nothing to prevent the misconduct." [Doc. 50, pg. 5]. This argument amounts to a mere recitation of the standard and fails to address what that information was or how it is sufficient to establish supervisory liability. Therefore, it is not well taken.

## III. SUMMARY JUDGMENT

Defendant Unicoi County moves for summary judgment regarding the causes asserted against it. The defendant argues that there was no underlying constitutional violation and even if there were, then there is no proof of a policy or practice of the county's deliberate indifference to serious medical needs.

### A. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party=s pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id*. A genuine issue for trial is not established by evidence that is Amerely colorable,@ or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

**B. ANALYSIS**

First, the defendant argues that because there was no underlying constitutional violation, the County cannot be liable. *See Hubbard*, 199 Fed. App'x at 442. It is a correct statement of the law that absent an underlying constitutional violation, a county or municipality cannot be found liable. *See id.*; *see also Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). In addition, this Court has found that there is no genuine issue of material fact that the named defendants in this suit violated the plaintiff's constitutional rights. That being said, however, as Defendant Unicoi County candidly admits in its Reply, [Doc. 61, pg. 1], there is a genuine issue of fact as to whether Jailer Oliver, individually, was deliberately indifferent to the serious medical needs of the plaintiff. This Court readily agrees with this concession. There definitely is a genuine issue of fact regarding the liability of Jailer Oliver in his individual capacity. Nonetheless, Jailer Oliver was not a named defendant in this suit. As such, he cannot be found liable.[2] Accordingly, this Court will address the merits of defendant's motion.

---

[2] The plaintiff cannot now seek to amend the Complaint and add Jailer Oliver, for the statute of limitations has run. *See* Tenn. Code Ann. § 28-3-104 (2016). Furthermore, any amendment would not relate back under Rule 15(c)(3)(B) because "this requirement is not satisfied where the caption of an original complaint refers to 'unknown police officers' and, after the expiration of the applicable limitations period, an amended complaint specifically names those officers." *Force v. City of Memphis*, 101 F.3d 702 (6th Cir. 1996) (quoting *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.), *cert. denied*, 117 S. Ct. 78 (1996)).

9

Second, the defendant argues that it is entitled to summary judgment because there is no proof of a policy or practice that was the moving force in causing the alleged constitutional violation despite plaintiff's allegation in paragraph 57 of the Complaint. It states:

> 57. The customs, practices, and policies of the Jail at the time of Mr. Smith's incarceration, as promulgated by Unicoi County and/or its Sheriff's Department and carried out by DOE1, facilitated the substantial risk of serious harm or injury to Mr. Smith.

[Doc. 1, ¶ 57].

To establish liability under § 1983, a plaintiff must demonstrate that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1979)). Suits against defendants in their official capacities as county employees are essentially suits against the county. *See Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)); *see also Scott*, 205 F.3d at 879 n. 21. It is firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 694. To prevail, the plaintiff must show that the alleged federal rights violation occurred because of a municipal policy or custom. *Id.*

In so doing, the plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003).

A plaintiff may look to four different avenues to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Monell*, 436 U.S. at 694.

Generally, the Sixth Circuit has defined a policy as one that affirmatively commands that a deprivation of constitutional rights occur. *See Highfill v. City of Memphis*, 425 Fed. App'x 470, 476 (6th Cir. 2011). A custom or practice is an acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. *Id*. Furthermore, to prove a practice or custom, the plaintiff must show that the "relevant practice [must be] so widespread as to have the force of law." *Board of County Com'rs of Bryan County, Okl., v. Brown*, 520 U.S. 397, 404 (1997). In addition, "[a] custom . . . must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne County Tenn.*, 103 F.3d 495-507-08 (6th Cir. 1996) (quotation marks omitted).

Regarding these policy and practice claims, the plaintiff admits that there are no disputed facts for trial. [Doc. 60, pg. 3, ¶¶ 18-19]. The defendant set forth the following facts which plaintiff agreed were undisputed:

> 18. Unicoi County does not have any custom, policy or practice that would "facilitate" a jailer ignoring a substantial risk of serious harm to an inmate. [Hensley Decl., ¶¶ 4-5]
> 19. There has not been a practice of Unicoi County jailers – much less a widespread practice – to ignore or disregard serious medical needs of inmates. [Hensley Decl., ¶ 6]

[Doc. 55, pg. 3, ¶¶ 18-19]; [Doc. 60, pg. 3, ¶¶ 18-19].

Nevertheless, the plaintiff argued in his Response, [Doc. 59, pgs. 5-6], that "evidence before the Court" establishes a policy, custom and practice. However, the plaintiff fails to point

11

the Court to this evidence. He merely reiterates what Jailer Oliver did or failed to do. As such, summary judgment is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the plaintiff's motion, [Doc. 49], is DENIED. The defendant's motion, [Doc. 54], is GRANTED. A separate judgment shall enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE